WILDE & ASSOCIATES
Gregory L. Wilde, Esq.
Nevada Bar No. 004417
208 South Jones Boulevard
Las Vegas, Nevada 89107
Telephone: 702 258-8200
bk@wildelaw.com
Fax: 702 258-8787

Electronically Filed on _____

and

MARK S. BOSCO, ESQ.
Arizona Bar No. 010167
TIFFANY & BOSCO, P.A.
2525 East Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 255-6000

U.S. Bank National Association, as Trustee, on behalf of the holders of the Terwin Mortgage Trust 2006-5, Asset-backed Certificates, Series 2006-5, TMTS Series 2006-5
09-75159

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In Re: | BK-S-09-22799-mkn |
| Peter F. Churchill and Rene S. Churchill | Date: 10/23/09<br>Time: 1:30pm |
| Debtor(s). | Chapter 7 |

## MOTION FOR RELIEF FROM AUTOMATIC STAY

U.S. Bank National Association, as Trustee, on behalf of the holders of the Terwin Mortgage Trust 2006-5, Asset-backed Certificates, Series 2006-5, TMTS Series 2006-5, Secured Creditor herein, ("Secured Creditor" or "Movant" hereinafter), alleges as follows:

    1.    That on or about July 17, 2009, the above named Debtors filed their current Chapter 7 Petition in Bankruptcy with the Court.

2.      Secured Creditor is the current payee of a promissory note dated February 17, 2006 in the principal sum of $260,000.00 ("Promissory Note" herein), secured by a Real Property Trust Deed of same date ("Trust Deed" herein) upon property generally described as 1022 Kings VW Ct., Henderson, NV 89002, and legally described as follows:

> Lot One (1) in Block "S" of AMENDED PLAT OF A PORTION OF PARADISE HILLS NO. 5- BY LEWIS HOMES, as shown by map thereof on file in Book 75 of Plats, Page 90, in the office of the County Recorder of Clark Couonty, Nevada.

("subject property" herein).

3.      Secured Creditor is informed and believes, and, based upon such information and belief, alleges that title to the subject property is currently vested in the name of Debtor.

4.      With respect to secured Creditor's trust deed the following is due and owing:

| | |
|---|---|
| Unpaid Principal Balance | $259,666.72 |
| 4 Monthly Payments at $1,995.65 (May 1, 2009-August 1, 2009) | $ 7,982.60 |
| 1 Monthly Payment (September 1, 2009) | $ 2,025.15 |
| Accrued Late Charges | $    316.32 |
| Escrow Advance | $    265.91 |
| Total-Fees | $      17.70 |
| Motion Filing Fee | $    150.00 |
| Attorneys Fees | $    750.00 |
| Total Arrearages | $11,507.68 |

Furthermore, a payment becomes due on October 1, 2009 and on the first (1st) day of every month thereafter, and a late charge becomes due on any payment not paid within fifteen (15) days from the date the monthly payment is due.

5.      Movant is informed and believes and therefore alleges that the Debtor and bankruptcy estate have insufficient equity in the property.    The fair market value of the property pursuant to www.Zillow.com is $196,000.00, less ten percent (10%) cost of marketing, less the first secured lien resulting in insufficient equity.    Therefore, the secured creditor is not adequately protected.  A true and correct copy of the www.Zillow.com is attached hereto as Exhibit "A".

6.    Secured Creditor has elected to initiate foreclosure proceedings on the Property with respect to the subject Trust Deed; however Secured Creditor is precluded from proceeding to publish the necessary notices and commence said foreclosure action during the pendency of this Bankruptcy.

7.    Secured Creditor has incurred to date attorney's fees of approximately $750.00.

8.    Secured Creditor urges that this Court issue and Order herein permitting this Secured Creditor to proceed to a Foreclosure Sale of the Property, including necessary action to obtain possession of the Property.

9.    Secured Creditor's Information Sheet as to the extent of liens and encumbrances against the subject property is attached hereto as Exhibit "B" and incorporated herein by reference. Secured Creditor will seek leave of Court to specify any further encumbrances against the subject property at the time of hearing.

10.    James F. Lisowski. Sr. has been appointed by this Court the Chapter 7 Trustee in this instant Bankruptcy proceeding.  By virtue of the position as Trustee of the estate of Debtor herein. Debtor holds title to the subject property in that capacity.  To the extent the relief sought herein is granted, Respondent, James F. Lisowski, Sr., Trustee. is bound any such judgment.

11.    This Court has jurisdiction of this action pursuant to the provisions of 11 U.S.C. Section 362(d).

12.    Secured Creditor asserts that a foreclosure proceeding has not been initiated concerning the subject property.  As a result. Secured Creditor asks the Court to waive the requirement of notifying other lienholders as detailed in Local Rule 4001 (a)(1).  Such lienholders will be notified of a foreclosure proceeding if and when one is initiated.

WHEREFORE, Secured Creditor prays judgment as follows:

(1)    For an order granting relief from the Automatic Stay. and permitting this Secured Creditor to move ahead with foreclosure proceedings under this Secured Creditor's Trust Deed and to sell the subject property at a Foreclosure Sale under the items of said Trust Deed, including necessary action to obtain possession of the Property.

(2)     That a finding that Rule 4001(a)(3) of the Rules of Federal Bankruptcy Procedure is not applicable and Secured Creditor may immediately enforce and implement the order granting relief from the automatic stay.

(3)     In the alternative, an Order requiring the Debtor to reinstate and maintain all obligations due under all of the trust deeds encumbering the subject property and further allowing Secured Creditor with the remedies to proceed with foreclosure should the Debtor not maintain payments.

(4)     For attorneys' fees and costs of suit incurred herein.

(5)     For such other and further relief as this Court deems appropriate.

DATED _____.

                                        **WILDE & ASSOCIATES**


                                        By _____

                                        **GREGORY L. WILDE, ESQ.**
                                        Attorney for Secured Creditor
                                        208 South Jones Boulevard
                                        Las Vegas, Nevada 89107



WHEN RECORDED MAIL TO
Nationwide Title Clearing, Inc.
ATTN: Dusti Woodbury - CIT Unit
2100 Alt 19 North
Palm Harbor, FL 34683

MAIL TAX STATEMENTS TO
Peter F Churchill
Rene S Churchill
310 Perry Ellis Dr
Henderson          , NV 89014
ASSESSOR'S PARCEL NUMBER
179-31-512-001

MIN: 100263195009943646



THIS IS CERTIFIED TO BE A
TRUE & CORRECT COPY OF
THE ORIGINAL.
BY
Chicago Title

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# DEED OF TRUST

| TRUSTOR(S) Name(s) and Address(es) | PETER F CHURCHILL RENE S CHURCHILL | Lender Name and Address | The CIT Group/Consumer Finance, Inc. (a Delaware Corporation) 2030 E. FLAMINGO ROAD SUITE 260 LAS VEGAS, NV 89119 ("Lender") |
| | 310 PERRY ELLIS DR HENDERSON          , NV 89014 ("Borrower") | Beneficiary Name and Address | MERS P.O. BOX 2026 FLINT, MI 48501-2026 |

TRUSTEE'S NAME AND ADDRESS
CHICAGO TITLE, 400 N. STEPHANIE ST. STE 180, HENDERSON, NV 89014

| LOAN NUMBER | DATE | PRINCIPAL BALANCE | FINAL PAYMENT DATE |
| --- | --- | --- | --- |
| 9500994364 | 02/17/06 | $260,000.00 | 03/01/36 |

Borrower owes Lender the principal sum shown in the Principal Balance box above. This debt is evidenced by Borrower's note dated the same date as this Deed of Trust ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on the Final Payment Date shown above. The beneficiary of this Deed of Trust is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. This Deed of Trust secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 2 to protect the security of this Deed of Trust; and (c) the performance of Borrower's covenants and agreements under this Deed of Trust and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in **CLARK**                         County, Nevada:

SEE ATTACHED LEGAL DESCRIPTION 'EXHIBIT A'

which has the address of   1022 KINGS VIEW COURT                         ,   HENDERSON,
                                                    (Street)                                                (City)
Nevada          89015                         ("Property Address");
                          (Zip Code)

Together with all the improvements now or hereafter erected on the property, and all easements, rights,

02/16/06    20:13    1898976
2-2500A (4/04) Nevada Deed of Trust

Initial(s)   x         x
Page 1 of 6

appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property.   All replacements and additions shall also be covered by this Deed of Trust.   All of the foregoing is referred to in this Deed of Trust as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Deed of Trust.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property. Borrower warrants that the lien created by this Deed of Trust is a valid and enforceable lien subordinate only to easements, liens and restrictions of record as of the date of this Deed of Trust, and that during the entire term of the indebtedness secured by this Deed of Trust Borrower will not permit this lien to become subordinate to anything else. Borrower warrants and will defend the title to the Property against all claims and demands except such easements, liens and restrictions of record as of the date of this Deed of Trust.

Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2 Taxes-Liens-Insurance-Maintenance. Borrower will pay, when they are due and payable, all taxes, liens or security titles (legal claims), assessments, obligations, water rates and any other charges against the Property, whether superior or inferior to the lien or security title of this Deed of Trust, including paying Lender any costs, including outside attorney's fees incurred by Lender in defending any lawsuit by prior or later lienholders or security title holders on the Property, maintain hazard insurance on the Property in Lender's favor in a form and amount satisfactory to Lender and maintain and keep the Property in good repair at all times during the term of this Deed of Trust pursuant to paragraph 4 below. If Borrower fails to maintain the Property in good repair, Lender may enter the Property and make those repairs necessary to maintain the Property in good repair. Lender may pay any such tax, lien or security title, assessment, obligation, water rates, premium or other charge necessary to maintain the Property in good repair, or any amounts required to purchase such insurance in Lender's own name, if Borrower fails to do so. The amount Lender pays will be due and payable to Lender on demand, will bear an interest charge at the interest rate in effect from time to time provided in the Note secured by this Deed of Trust if permitted by law, or, if not, at the highest lawful interest rate, will be an additional lien or security title on the Property and may be enforced and collected in the same manner as the other obligations secured by this Deed of Trust. The insurance carrier providing the insurance referred to above will be chosen by Borrower subject to Lender's approval which will not be unreasonably withheld. All insurance policies and renewals must be acceptable to Lender and must include a standard mortgagee clause. Lender will have the right to hold the policies and renewals. If Lender requires, Borrower will promptly give to Lender all receipts of paid premiums and renewal notices. In the event of a loss, Borrower will give prompt notice to the insurance carrier and Lender. Lender may file a proof of loss if not made promptly by Borrower. Insurance proceeds will be applied to the restoration or repair of the Property damaged or, at Lender's option, the insurance proceeds will be applied to the sums secured by this Deed of Trust, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within ten (10) days, a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Deed of Trust, whether or not then due. The ten (10)-day period will begin when the notice is given.

3. Application of Payments. Unless applicable law provides otherwise, payments shall be first applied to any prepayment charges, then to any costs and expenses incurred under this Deed of Trust, then to interest then due and then to principal.

4. Preservation and Maintenance of Property; Leaseholds. Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is ona leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to theProperty, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

*PETER F CHURCHILL*
*02/16/06    20:13    1898976*
2-2500B

Initial(s)  ___ x  ___ x

**5. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain the insurance in effect until such time as the requirement for the insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

**6. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender *shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.*

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Deed of Trust, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, the sums secured by this Deed of Trust shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Deed of Trust, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the payments referred to in paragraph 1 or change the amount of such payments.

**8. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**9. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Deed of Trust shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 15. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Deed of Trust but does not execute the Note: (a) is co-signing this Deed of Trust only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Deed of Trust; (b) is not personally obligated to pay the sums secured by this Deed of Trust; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Deed of Trust or the Note without that Borrower's consent.

**10. Loan Charges.** If the loan secured by this Deed of Trust is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount

necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**11. Legislation Affecting Lender's Rights.** If enactment or expiration of applicable laws has the effect of rendering any provision of the Note or this Deed of Trust unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Deed of Trust and may invoke any remedies permitted by paragraph 17.

**12. Notices.** Any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. Borrower requests that copies of any notices of default and sale be sent to Borrower's address which is the Property Address unless otherwise indicated on the front page of this Deed of Trust. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**13. Governing Law; Severability.** This Deed of Trust is made pursuant to the Alternative Mortgage Transactions Parity Act of 1982 and applicable regulations. Otherwise, to the extent not preempted by such Act or regulations, this Deed of Trust is governed by Nevada law, and any other applicable federal law. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision. To this end the provisions of this Deed of Trust and the Note are declared to be severable.

**14. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Deed of Trust.

**15. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

**16. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Deed of Trust discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Deed of Trust; or (b) entry of a judgment enforcing this Deed of Trust. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Deed of Trust and the Note had no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Deed of Trust, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien or security title of this Deed of Trust, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unchanged. Upon reinstatement by Borrower, this Deed of Trust and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 15.

**17. Default.** If Borrower defaults in paying any part of the indebtedness secured by this Deed of Trust or if Borrower defaults in any other way, the entire unpaid principal and any accrued and unpaid interest thereon and any other amounts Borrower then owes under the loan secured by this Deed of Trust will become due, if Lender desires.

Lender may execute and record, in the Office of the Recorder of each county in which the Property or some part is located, a written notice of the default and Lender's election to sell the Property secured by this Deed of Trust. Lender may rescind the notice before the Trustee's sale by executing and recording a notice of rescission, which will

cancel any prior notice of default and of any acceleration of the maturity of the indebtedness affected by any prior notice of default. Lender's rescission of a notice of default will not waive any existing or subsequent default nor impair Lender's right to execute any notice of default and election to cause the Property to be sold nor otherwise affect any of Lender's rights under this Deed of Trust.

After the time required by law following the recording of the notice of default has elapsed, the Trustee may give notice of sale as then required by law and, without demand on Borrower, sell the real estate at the time and place fixed in the notice of sale either as a whole or in separate parcels in whatever order the Trustee determines, at public auction to the highest bidder for cash. The Trustee may postpone the sale from time to time by making a public announcement at the original or previously postponed time and place of sale, and without further notice, the Trustee may make such sale at the time to which the sale may be so postponed.

The Trustee will deliver to the purchaser a Trustee's deed conveying the real estate sold, but without any covenant of warranty, express or implied. Any person, including Lender, Borrower or the Trustee, may bid at the sale and purchase the real estate. The proceeds of the sale will be applied by the Trustee first, to the payment of all fees and expenses of the Trustee and of this trust; second to all sums expended by Lender under the terms of this Deed of Trust which have not been repaid, with accrued interest at the amount allowed by law; third to all other sums secured by this Deed of Trust; and any remainder to the persons legally entitled to it.

**18. Lender in Possession.** Upon acceleration under paragraph 17 or abandonment of the Property, Lender (in person, by agent or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust.

**19. Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request the Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing debt secured by this Deed of Trust to the Trustee. Trustee shall reconvey the Property without warranty. The trustee or Lender may charge a fee for services rendered in connection with the preparation, execution or recordation of a reconveyance, or request for a reconveyance, to the extent allowed by law.  Such person or persons shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Deed of Trust is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**21. Riders to this Deed of Trust.** If one or more riders are executed by Borrower and recorded together with this Deed of Trust, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Deed of Trust as if the rider(s) were a part of this Deed of Trust [Check applicable box(s)]

[X] Adjustable Rate Rider    [ ] Condominium Rider    [ ] 1-4 Family Rider

[ ] Graduated Payment Rider    [X] Planned Unit Development Rider    [ ] Manufactured Housing Rider

[ ] Request for Copy of Notice of Default    [ ] Other(s) [specify]

PETER F CHURCHILL
02/16/06    20:13    1898976
2-2500E

Initial(s) _____ X _____ X

Page 5 of 6

**22. Transfer of Servicing.** If the servicing of this Deed of Trust and the indebtedness by which it secures is ever transferred from one servicing agent to another servicing agent, each such servicing agent shall inform the Borrower of the transfer prior to the creation of any obligation on the part of the Borrower to pay the new servicing agent.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Deed of Trust and in any rider(s) executed by Borrower and recorded with it.

_____        _____
PETER F CHURCHILL          -Borrower        RENE S CHURCHILL          -Borrower

_____        _____
-Non-Borrower Spouse                                  -Non-Borrower Spouse

STATE OF NEVADA

COUNTY OF _____Clark_____

On ____2-21-06____ before me, ____J. Makowski____

                                                     (Notary Name and Title)

_____

a Notary Public in and for the State of Nevada, personally appeared _____

**PETER F CHURCHILL AND RENE S CHURCHILL** _____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

```
NOTARY PUBLIC
STATE OF NEVADA
County of Clark
J. MAKOWSKI
Appt. No. 99-58865-1
My Appt. Expires Nov. 13, 2007
```
(Notarial Seal)

### REQUEST FOR RECONVEYANCE

TO TRUSTEE:

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated: _____        _____

# ADJUSTABLE RATE PROMISSORY NOTE

| NAMES OF ALL BORROWERS: | | | LENDER: | | | |
|---|---|---|---|---|---|---|
| PETER F CHURCHILL | | | THE CIT GROUP/CONSUMER FINANCE, INC. | | | |
| RENE S CHURCHILL | | | 2030 E. FLAMINGO ROAD | | | |
| Mailing Address: 310 PERRY ELLIS DR | | | SUITE 260 | | | |
| | | | LAS VEGAS, NV 89119 | | | |
| HENDERSON | | , NV 89014 | MIN: 100263195009943646 | | | |

| LOAN NUMBER | DATE | INITIAL INTEREST RATE | DATE FINANCE CHARGE BEGINS TO ACCRUE | NUMBER OF PAYMENTS | DATE FIRST PAYMENT DUE | |
|---|---|---|---|---|---|---|
| 9500994364 | 02/17/06 | 7.300 % | 03/01/06 | 360 | 04/01/06 | |
| AMOUNT OF FIRST PAYMENT | INITIAL AMOUNT OF OTHER PAYMENTS | | DATE FINAL PAYMENT DUE | LIFETIME MAXIMUM RATE | PRINCIPAL BALANCE | |
| $ 1,581.67 | $ 1,581.67 | | 03/01/36 | 13.300 % | $ 260,000.00 | |
| MARGIN | FIRST RATE CHANGE DATE | | FIRST RATE CHANGE DATE MAXIMUM CHANGE | SUBSEQUENT RATE CHANGE FREQUENCY | | SUBSEQUENT MAXIMUM CHANGE PER ADJUSTMENT |
| 6.300 Percentage Points | 03/01/08 | | 3.000 Percentage Points | Every  6  months | | 1.000 Percentage Points |

This loan is secured by a Deed of Trust on the real property located at:
1022 KINGS VIEW COURT,  HENDERSON,  NV  89015

The words "I," "me," "my," and "us" refer to all Borrowers signing this Note. The words "you" and "your" refer to Lender or Lender's transferee. I understand that the Lender may transfer this Note.

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay the Principal Balance shown above, plus interest and charges owing pursuant to this Note, to the order of the Lender. Interest will be charged on the unpaid principal beginning on the date shown above in the "Date Finance Charge Begins to Accrue" box and will continue until the Principal Balance has been paid in full.

**2. VARIABLE INTEREST RATES AND CHANGES IN MONTHLY PAYMENT AMOUNTS**

The yearly interest rate in effect on the Date Finance Charge Begins To Accrue is the Initial Interest Rate shown above. The interest rate will not change until the First Rate Change Date. Thereafter, it may change periodically, as shown in the "Subsequent Rate Change Frequency" box above. The date on which a new rate may take effect is called the "Rate Change Date." Beginning with the First Rate Change Date, the interest rate will be based on an Index. The "Index" is the average of the interbank offered rates for six month U.S. Dollar deposits in the London market based on quotations of 5 major banks (LIBOR), as published in The Wall Street Journal. If the Index is no longer available, you will select a new index which is comparable to the discontinued Index and you will notify me of the change in the Index. The most recent Index figure available as of the date 45 days before each Rate Change Date is called the "Current Index." Before each Rate Change Date, you will calculate the new interest rate by adding no more than the Margin shown above to the Current Index. You will then determine the amount of the level monthly payment that will be sufficient to repay the then unpaid principal balance in full by the Date Final Payment Due. The interest rate will never be increased or decreased on any single Rate Change Date by more than the Subsequent Maximum Change per Adjustment shown above, except that on the First Rate Change Date the interest rate will never be increased or decreased by more than the amount shown in the First Rate Change Date Maximum Change box above. The interest rate will never be greater than the Lifetime Maximum Rate during the entire term of this loan and at no time during the term of this loan will the rate be increased above the rate permitted by law. The new interest rate will become effective on the Rate Change Date. The new monthly payment will begin on the first monthly payment date after the Rate Change Date and will remain in effect until the monthly payment changes again. You will deliver by mail to me a notice of any change in the rate and the amount of the new monthly payment at least 30 days before the effective date of any change. The notice will include information required by law and possibly certain other information as well. Rate decreases will be mandatory upon decreases in the Index determined on Rate Change Dates, but rate increases based upon increases in the Index will be optional with you. However, the fact that you may not have made a permissible increase in whole or in part will not be considered a waiver of your right subsequently to make any other permissible increase within the limits stated in this section. Adjustments in the rate will be given effect by changing the dollar amounts of remaining equal monthly installments so that the total amount due under this Note will, if all payments are made when due, be paid by the Date Final Payment Due of this loan.

**3. PAYMENTS**

I will pay the principal and interest by making payments each month. My first payment will be in the amount shown above in the "Amount of First Payment" box. After the first payment, my monthly payments will be in the amount shown above in the "Initial Amount of Other Payments" box, unless the amount of my monthly payments is changed, in which case my monthly payments shall be calculated as set forth above in paragraph 2. I will make monthly payments on the same day of each month beginning on the date shown above in the "Date First Payment Due" box. I will make these payments every month until I have paid the Principal Balance of this Note and any other charges, described below, that I may owe under this Note. If on the "Date Final Payment Due" shown above I still owe amounts under this Note, I will pay all those amounts, in full, on that date, which is called the "maturity date." I will make my monthly payments at the address shown above under your name or at a different place if required by you.

**4. MY FAILURE TO PAY AS REQUIRED**

(A) Late Charge

If a payment is more than 15 days late, I will be charged a late charge equal to the lesser of $50 or 5% of the unpaid amount of the payment.

SEE PAGE 2 FOR ADDITIONAL IMPORTANT TERMS
SEE ATTACHED INTEREST ONLY ADDENDUM TO NOTE

THIS IS A TRUE & CORRECT COPY OF THE ORIGINAL.

BY _____ Chicago Title

I hereby acknowledge receipt of a completed and signed copy of this Note.

_____ PETER F CHURCHILL    Borrower

_____ RENE S CHURCHILL    Borrower

**(B) Check Collection Charge**

If I make a payment by check, negotiable order of withdrawal, share draft or other negotiable instrument and that instrument is returned or dishonored for any reason, I will pay you a check collection charge. The amount of the charge will be any amount passed on to you by any financial institution in connection with such instrument not to exceed $20.

**(C) Default**

I will be in default if:

(1) I do not pay the full amount of any monthly payment on time;

(2) I default under the Mortgage as defined in section 9 which secures this Note or under any other mortgage which I enter into with you;

(3) I make an assignment for the benefit of creditors;

(4) I violate or fail to abide by any term or condition of this Note or any other agreement I have with you;

(5) I have made any statement or representation to you in connection with this Note which is false or incorrect;

(6) I begin (or if someone else begins against me) a case in bankruptcy, receivership, reorganization, rehabilitation, insolvency or any other matter whether or not similar to them; or if a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative is appointed for me or any of my property;

(7) My property becomes subject to a proceeding in eminent domain or other similar governmental action;

(8) Garnishment, attachment, levy or execution is issued against any of my property or effects (or any property of any surety or guarantor hereof); or

(9) You, in good faith, as defined in NRS section 104., deem yourself to be insecure for any reason or believe that the prospect of payment by me on this Note (or any surety or guarantor hereof) is impaired.

If I am in default you may require me to pay immediately the full unpaid principal balance plus accrued and unpaid interest, and any other charges I owe under this Note.

**(D) Payment of Note Holder's Costs and Expenses**

If I default and you require me to pay immediately in full as described above, I promise to pay your reasonable attorney's fees if this loan is referred to an attorney, not your employee, for collection, and legally permitted foreclosure expenses and court costs.

**5. MY RIGHT TO MAKE PREPAYMENTS/PREPAYMENT PENALTY** - I have the right to make payments of principal before they are due. Any payment made before it is due is known as a "prepayment."

If I make a partial prepayment, there will be no changes in the amount of my monthly payments unless you agree to those changes. I may make a full or partial prepayment at any time except that I may be charged a penalty for a prepayment in full or in part made in any of the first two years of the loan, as follows: In any 12 month period of the loan during the loan's first two years, I may pay up to 20% of the original balance without penalty. During any such 12 month period, I will pay a prepayment penalty equal to the payment of 6 months advance interest on the amount prepaid in excess of 20% of the original principal balance. You earn any prepaid finance charge at the time the loan is made and no part of it will be refunded if I pay in full ahead of schedule. (16)

Best Quality

**6. MY WAIVERS** - I waive my rights to require you to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certificate of nonpayment (known as a "protest"). Anyone else (i) who agrees to keep the promises made in this Note, or (ii) who agrees to make payments to you if I fail to keep my promises under this Note, or (iii) who signs this Note to transfer it to someone else (known as "guarantors, sureties and endorsers"), also waives these rights. I also waive any rights I may have under any valuation or appraisement laws.

**7. CHANGES/DELAY IN ENFORCEMENT** - No change or cancellation of this Note shall be effective unless the change or cancellation is in writing and has been signed by you and me. You can delay enforcing, or fail to enforce, any or all of your remedies under this Note without losing those or other remedies or rights.

**8. GIVING OF NOTICES** - Any notice that must be given to me under this Note will be given by delivering it or by mailing it addressed to me at the Mailing Address above. A notice will be delivered to me at a different address if I give you a notice of my different address.

Any notice that must be given to you under this Note will be given by mailing it to you at the address stated above. A notice will be mailed to you at a different address if I am given a notice of that different address.

**9. THIS NOTE COVERED BY A MORTGAGE OR DEED OF TRUST** - A Mortgage or Deed of Trust of the same date as this Note protects you from possible losses which might result if I do not keep the promises which I make in this Note. That Mortgage or Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

**10. RESPONSIBILITY OF PERSONS UNDER THIS NOTE** - If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed plus the charges as described in Section 4(d) above and to keep all of the promises made in this Note. Any guarantor, surety or endorser of the Note (as described in Section 6 above) is also obligated to do these things. You may enforce your rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety or endorser of this Note (as described in Section 6 above) is also obligated to keep all of the promises made in this Note.

**11. APPLICATION OF PAYMENTS** - Payments will be applied to accrued interest to the date of payment before the unpaid principal balance.

**12. LOAN CHARGES** - If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. You may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**13. APPLICABLE LAW** - This Note is made pursuant to the Alternative Mortgage Transactions Parity Act of 1982 and applicable regulations. Otherwise, to the extent not preempted by such Act or regulations, this Note is governed by Nevada law, and any other applicable federal law. In the event of a conflict between any provision of this Note and any federal or Nevada State statute, law or regulation in effect as of the date of this Note, the statute, law or regulation shall control to the extent of such conflict and the provision contained in this Note shall be without effect. All other provisions of this Note will remain fully effective and enforceable.

SEE PAGE 1 FOR ADDITIONAL IMPORTANT TERMS



# INTEREST ONLY ADDENDUM
# TO PROMISSORY NOTE

21 Ptc Rev

THIS INTEREST ONLY ADDENDUM is made this ~~17TH~~ day of **FEBRUARY** , **2006** and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Promissory Note (the "Note") given by the undersigned (the "Borrower") to The CIT Group/Consumer Finance, Inc.     (the "Lender") of the same date and covering the property described in the Security Instrument and located at

**1022 KINGS VIEW COURT,   HENDERSON,   NV   89015**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Note and the Security Agreement, Borrower and Lender further agree and covenant as follows:

Paragraph 3 of the Note establishes how to determine the time and place for payments. Those provisions are revised and restated as follows:

### 3. PAYMENTS

Best Quality

#### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month. I will make my monthly payment on the same day of each month, beginning on the date shown above in the "Date First Payment Due" box. I will make these payments every month until I have paid all of the principal and interest and any other charges that I may owe under this Note. If, on the date shown above in the "Date Final Payment Due" box I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date." I will make my monthly payments at the address shown above under your name or at a different place if required by you.

#### (B) Interest Only Payments

For the first __60__ monthly payments, my payment due will be an amount sufficient to pay interest that accrues on the principal. The amount of my first payment is shown above in the "Amount of First Payment" box.

#### (C) Amortizing Payments

For the remaining __300__ monthly payments, my payment due will be an amount sufficient to repay the principal and interest that I owe in substantially equal installments by the maturity date.

#### (D) Prepayment of Principal

I have the right to make payments of principal before they are due. Any payment made before it is due is known as a "prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

**BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Addendum.**

_____ (Seal)        _____ (Seal)
**PETER F CHURCHILL**        Borrower        **RENE S CHURCHILL**        Borrower

02/16/06   20:13   189897d
2-3987 (7/05) Interest Only Addendum to Adjustable Rate Promissory Note

# ADJUSTABLE RATE PROMISSORY NOTE

| NAMES OF ALL BORROWERS: | | | LENDER: | | | |
|---|---|---|---|---|---|---|
| PETER F CHURCHILL | | | THE CIT GROUP/CONSUMER FINANCE, INC. | | | |
| RENE S CHURCHILL | | | 2030 E. FLAMINGO ROAD | | | |
| Mailing Address: | | | SUITE 260 | | | |
| 310 PERRY ELLIS DR | | | LAS VEGAS, NV 89119 | | | |
| HENDERSON , NV 89014 | | | MIN: 100263195009943646 | | | |

| LOAN NUMBER | DATE | INITIAL INTEREST RATE | DATE FINANCE CHARGE BEGINS TO ACCRUE | NUMBER OF PAYMENTS | DATE FIRST PAYMENT DUE | |
|---|---|---|---|---|---|---|
| 9500994364 | 02/14/06 21 | 7.300 % | 03/01/06 | 360 | 04/01/06 | |

| AMOUNT OF FIRST PAYMENT | INITIAL AMOUNT OF OTHER PAYMENTS | DATE FINAL PAYMENT DUE | LIFETIME MAXIMUM RATE | PRINCIPAL BALANCE | |
|---|---|---|---|---|---|
| $1,581.67 | $1,581.67 | 03/01/36 | 13.300 % | $260,000.00 | |

| MARGIN | | FIRST RATE CHANGE DATE | FIRST RATE CHANGE DATE MAXIMUM CHANGE | SUBSEQUENT RATE CHANGE FREQUENCY | | SUBSEQUENT MAXIMUM CHANGE PER ADJUSTMENT | |
|---|---|---|---|---|---|---|---|
| 6.300 Percentage Points | | 03/01/08 | 3.000 Percentage Points | Every 6 months | | 1.000 Percentage Points | |

This loan is secured by a Deed of Trust on the real property located at:
1022 KINGS VIEW COURT, HENDERSON, NV 89015

The words "I," "me," "my," and "us" refer to all Borrowers signing this Note. The words "you" and "your" refer to Lender or Lender's transferee. I understand that the Lender may transfer this Note.

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay the Principal Balance shown above, plus interest and charges owing pursuant to this Note, to the order of the Lender. Interest will be charged on the unpaid principal beginning on the date shown above in the "Date Finance Charge Begins to Accrue" box and will continue until the Principal Balance has been paid in full.

**2. VARIABLE INTEREST RATES AND CHANGES IN MONTHLY PAYMENT AMOUNTS**

The yearly interest rate in effect on the Date Finance Charge Begins To Accrue is the Initial Interest Rate shown above. The interest rate will not change until the First Rate Change Date. Thereafter, it may change periodically, as shown in the "Subsequent Rate Change Frequency" box above. The date on which a new rate may take effect is called the "Rate Change Date." Beginning with the First Rate Change Date, the interest rate will be based on an Index. The "Index" is the average of the interbank offered rates for six month U.S. Dollar deposits in the London market based on quotations of 5 major banks (LIBOR), as published in The Wall Street Journal. If the Index is no longer available, you will select a new index which is comparable to the discontinued Index and you will notify me of the change in the Index. The most recent Index figure available as of the date 45 days before each Rate Change Date is called the "Current Index." Before each Rate Change Date, you will calculate the new interest rate by adding no more than the Margin shown above to the Current Index. You will then determine the amount of the level monthly payment that will be sufficient to repay the then unpaid principal balance in full by the Date Final Payment Due. The interest rate will never be increased or decreased on any single Rate Change Date by more than the Subsequent Maximum Change per Adjustment shown above, except that on the First Rate Change Date the interest rate will never be increased or decreased by more than the amount shown in the First Rate Change Date Maximum Change box above. The interest rate will never be greater than the Lifetime Maximum Rate during the entire term of this loan and at no time during the term of this loan will the rate be increased above the rate permitted by law. The new interest rate will become effective on the Rate Change Date. The new monthly payment will begin on the first monthly payment date after the Rate Change Date and will remain in effect until the monthly payment changes again. You will deliver by mail to me a notice of any change in the rate and the amount of the new monthly payment at least 30 days before the effective date of any change. The notice will include information required by law and possibly certain other information as well. Rate decreases will be mandatory upon decreases in the Index determined on Rate Change Dates, but rate increases based upon increases in the Index will be optional with you. However, the fact that you may not have made a permissible increase in whole or in part will not be considered a waiver of your right subsequently to make any other permissible increase within the limits stated in this section. Adjustments in the rate will be given effect by changing the dollar amounts of remaining equal monthly installments so that the total amount due under this Note will, if all payments are made when due, be paid by the Date Final Payment Due of this loan.

**3. PAYMENTS**

I will pay the principal and interest by making payments each month. My first payment will be in the amount shown above in the "Amount of First Payment" box. After the first payment, my monthly payments will be in the amount shown above in the "Initial Amount of Other Payments" box, unless the amount of my monthly payments is changed, in which case my monthly payments shall be calculated as set forth above in paragraph 2. I will make monthly payments on the same day of each month beginning on the date shown above in the "Date First Payment Due" box. I will make these payments every month until I have paid the Principal Balance of this Note and any other charges, described below, that I may owe under this Note. If on the "Date Final Payment Due" shown above I still owe amounts under this Note, I will pay all those amounts, in full, on that date, which is called the "maturity date." I will make my monthly payments at the address shown above under your name or at a different place if required by you.

**4. MY FAILURE TO PAY AS REQUIRED**

(A) Late Charge

If a payment is more than 15 days late, I will be charged a late charge equal to the lesser of $50 or 5% of the unpaid amount of the payment.

Best Quality

SEE PAGE 2 FOR ADDITIONAL IMPORTANT TERMS
SEE ATTACHED INTEREST ONLY ADDENDUM TO NOTE

I hereby acknowledge receipt of a completed and signed copy of this Note.

BY
Chicago Title / THE ORIGINA

PETER F CHURCHILL                              Borrower

RENE S CHURCHILL                               Borrower

**(B) Check Collection Charge**

If I make a payment by check, negotiable order of withdrawal, share draft or other negotiable instrument and that instrument is returned or dishonored for any reason, I will pay you a check collection charge. The amount of the charge will be any amount passed on to you by any financial institution in connection with such instrument not to exceed $20.

**(C) Default**

I will be in default if:

(1) I do not pay the full amount of any monthly payment on time;

(2) I default under the Mortgage as defined in section 9 which secures this Note or under any other mortgage which I enter into with you;

(3) I make an assignment for the benefit of creditors;

(4) I violate or fail to abide by any term or condition of this Note or any other agreement I have with you;

(5) I have made any statement or representation to you in connection with this loan which is false or incorrect;

(6) I begin (or if someone else begins against me) a case in bankruptcy, receivership, reorganization, rehabilitation, insolvency or any other matter whether or not similar to them; or if a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative is appointed for me or any of my property;

(7) My property becomes subject to a proceeding in eminent domain or other similar governmental action;

(8) Garnishment, attachment, levy or execution is issued against any of my property or effects (or any property of any surety or guarantor hereof); or

(9) You, in good faith, as defined in NRS section 104., deem yourself to be insecure for any reason or believe that the prospect of payment by me on this Note (or any surety or guarantor hereof) is impaired.

If I am in default you may require me to pay immediately the full unpaid principal balance plus accrued and unpaid interest, and any other charges I owe under this Note.

**(D) Payment of Note Holder's Costs and Expenses**

If I default and you require me to pay immediately in full as described above, I promise to pay your reasonable attorney's fees if this loan is referred to an attorney, not your employee, for collection, and legally permitted foreclosure expenses and court costs.

**5. MY RIGHT TO MAKE PREPAYMENTS/PREPAYMENT PENALTY** - I have the right to make payments of principal before they are due. Any payment made before it is due is known as a "prepayment."

If I make a partial prepayment, there will be no changes in the amount of my monthly payments unless you agree to those changes. I may make a full or partial prepayment at any time except that I may be charged a penalty for a prepayment in full or in part made in any of the first two years of the loan, as follows: In any 12 month period of the loan during the loan's first two years, I may pay up to 20% of the original balance without penalty. During any such 12 month period, I will pay a prepayment penalty equal to the payment of 6 months advance interest on the amount prepaid in excess of 20% of the original principal balance. You earn any prepaid finance charge at the time the loan is made and no part of it will be refunded if I pay in full ahead of schedule. (16)

Best Quality

**6. MY WAIVERS** - I waive my rights to require you to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certificate of nonpayment (known as a "protest"). Anyone else (i) who agrees to keep the promises made in this Note, or (ii) who agrees to make payments to you if I fail to keep my promises under this Note, or (iii) who signs this Note to transfer it to someone else (known as "guarantors, sureties and endorsers"), also waives these rights. I also waive any rights I may have under any valuation or appraisement laws.

**7. CHANGES/DELAY IN ENFORCEMENT** - No change or cancellation of this Note shall be effective unless the change or cancellation is in writing and has been signed by you and me. You can delay enforcing, or fail to enforce, any or all of your remedies under this Note without losing those or other remedies or rights.

**8. GIVING OF NOTICES** - Any notice that must be given to me under this Note will be given by delivering it or by mailing it addressed to me at the Mailing Address above. A notice will be delivered to me at a different address if I give you a notice of my different address.

Any notice that must be given to you under this Note will be given by mailing it to you at the address stated above. A notice will be mailed to you at a different address if I am given a notice of that different address.

**9. THIS NOTE COVERED BY A MORTGAGE OR DEED OF TRUST** - A Mortgage or Deed of Trust of the same date as this Note protects you from possible losses which might result if I do not keep the promises which I make in this Note. That Mortgage or Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

**10. RESPONSIBILITY OF PERSONS UNDER THIS NOTE** - If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed plus the charges as described in Section 4(d) above and to keep all of the promises made in this Note. Any guarantor, surety or endorser of the Note (as described in Section 6 above) is also obligated to do these things. You may enforce your rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety or endorser of this Note (as described in Section 6 above) is also obligated to keep all of the promises made in this Note.

**11. APPLICATION OF PAYMENTS** - Payments will be applied to accrued interest to the date of payment before the unpaid principal balance.

**12. LOAN CHARGES** - If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. You may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**13. APPLICABLE LAW** - This Note is made pursuant to the Alternative Mortgage Transactions Parity Act of 1982 and applicable regulations. Otherwise, to the extent not preempted by such Act or regulations, this Note is governed by Nevada law, and any other applicable federal law. In the event of a conflict between any provision of this Note and any federal or Nevada State statute, law or regulation in effect as of the date of this Note, the statute, law or regulation shall control to the extent of such conflict and the provision contained in this Note shall be without effect. All other provisions of this Note will remain fully effective and enforceable.

SEE PAGE 1 FOR ADDITIONAL IMPORTANT TERMS



# INTEREST ONLY ADDENDUM
# TO PROMISSORY NOTE

21 Ptc Rsc

THIS INTEREST ONLY ADDENDUM is made this ~~17TH~~ day of **FEBRUARY** , **2006** and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Promissory Note (the "Note") given by the undersigned (the "Borrower") to The CIT Group/Consumer Finance, Inc.    (the "Lender") of the same date and covering the property described in the Security Instrument and located at
**1022 KINGS VIEW COURT,  HENDERSON,  NV  89015**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Note and the Security Agreement, Borrower and Lender further agree and covenant as follows:

Paragraph 3 of the Note establishes how to determine the time and place for payments. Those provisions are revised and restated as follows:

### 3. PAYMENTS

**Best Quality**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month. I will make my monthly payment on the same day of each month, beginning on the date shown above in the "Date First Payment Due" box. I will make these payments every month until I have paid all of the principal and interest and any other charges that I may owe under this Note. If, on the date shown above in the "Date Final Payment Due" box I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date." I will make my monthly payments at the address shown above under your name or at a different place if required by you.

(B) Interest Only Payments

For the first __60__ monthly payments, my payment due will be an amount sufficient to pay interest that accrues on the principal. The amount of my first payment is shown above in the "Amount of First Payment" box.

(C) Amortizing Payments

For the remaining __300__ monthly payments, my payment due will be an amount sufficient to repay the principal and interest that I owe in substantially equal installments by the maturity date.

(D) Prepayment of Principal

I have the right to make payments of principal before they are due. Any payment made before it is due is known as a "prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

**BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Addendum.**

_____ (Seal)
**PETER F CHURCHILL**          Borrower

_____ (Seal)
**RENE S CHURCHILL**          Borrower

*02/16/06   20:13   1898976*
*2-3987 (7/05) Interest Only Addendum to Adjustable Rate Promissory Note*

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this _____ 17th _____ day of
February, 2006 _____, and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust or Security Deed (the "Mortgage") of the same date, given by the undersigned (the "Borrower") to
secure Borrower's Note to _____ THE CIT GROUP/CONSUMER FINANCE, INC. _____
(the "Lender") of the same date and covering the Property described in the Mortgage and located at:
**1022 KINGS VIEW COURT, HENDERSON, NV 89015**

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such
parcels and certain common areas and facilities, as described in **the covenants, conditions, and restrictions filed
the Real Property records of the county in which the property is located** _____ (the "Declaration").
The Property is a part of a planned unit development known as
**PARADISE HILLS**

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity
owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits
and proceeds of the Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Mortgage, Borrower and Lender
further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent
Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument or
any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations
of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to
the Constituent Documents.

**B. Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted insurance
carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides
insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and
hazards included within the term "extended coverage," then:

(i) Lender waives the provision in the Mortgage, if any, for the monthly payment to Lender of the yearly
premium installments for hazard insurance on the Property; and

(ii) Borrower's obligation under the Mortgage to maintain hazard insurance coverage on the Property is
deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.
Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the
master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the
Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and
shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Mortgage, with any excess paid
to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the
Owners Association maintains a public liability insurance policy acceptable in form, amount and extent of coverage
to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to
Borrower in connection with any condemnation or other taking of all or any part of the Property or the common
areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be
paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Mortgage as provided in the
Mortgage.

## SEE PAGE 2 FOR ADDITIONAL IMPORTANT TERMS

02/16/06   20:13      1898976   CHURCHILL PETER F

Initial(s) X _____ X _____

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i) the abandonment or termination of the PUD, except for abandonment or termination required bylaw in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owners Association; or

(iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, than Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Mortgage. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

## SEE PAGE 1 FOR ADDITIONAL IMPORTANT TERMS

_____ Seal          _____ Seal
PETER F CHURCHILL                    Borrower     RENE S CHURCHILL                     Borrower


_____ Seal          _____ Seal
                                     Borrower                                          Borrower

02/16/06   20:13   1898976
2-3259B

_Page 2 of 2_

ESCROW NO: 06029035-125-JM

## EXHIBIT A

Lot One (1) in Block "S" of AMENDED PLAT OF A PORTION OF PARADISE HILLS NO. 5 -
BY LEWIS HOMES, as shown by map thereof on file in Book 75 of Plats, Page 90, in the Office
of the County Recorder of Clark County, Nevada.

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this 17TH day of **FEBRUARY**, 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or similar instrument (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Promissory Note (the "Note") to **THE CIT GROUP/CONSUMER FINANCE, INC.**, (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
**1022 KINGS VIEW COURT HENDERSON, NV 89015** .

*Property Address*

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

The Note provides for an initial interest rate of **7.300** %. The Note provides for changes in the interest rate and the monthly payments, as follows. The interest rate I will pay may change on **03/01/08** and on that day every **6** month(s) thereafter. Each date on which my interest rate could change is called a "Change Date."

Beginning with the first Change Date, my interest will be based on an Index. The "Index" is the average of the interbank offered rates for six month U.S. Dollar deposits in the London market based on quotations of 5 major banks (LIBOR), as published in the Wall Street Journal. If the Index is no longer available, the Note Holder will choose a new Index which is based upon comparable information. The Note Holder will give me notice of this choice. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index." Before each Change Date, the Note Holder will calculate my new interest rate by adding **6.300** % to the Current Index. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment. The interest rate I am required to pay at the first Change Date will not be greater than **10.300** % or less than **4.300** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **1.000** % from the rate of interest I have been paying for the preceeding **6** months. My interest rate will never be greater than **13.300** %. My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again. The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and possibly certain other information as well.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
PETER F CHURCHILL          -Borrower

_____ (Seal)
RENE S CHURCHILL          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

*02/15/06    20:13    1898976*
*82-4383 (1/00) Multistate Adjustable Rate Mortgage Rider - LIBOR*

## PROMISSORY NOTE

| NAMES OF ALL BORROWERS:<br>PETER F CHURCHILL<br>RENE S CHURCHILL<br>Mailing<br>Address: 310 PERRY ELLIS DR<br>HENDERSON , NV 89014 | | | LENDER:<br>THE CIT GROUP/CONSUMER FINANCE. INC.<br>2030 E. FLAMINGO ROAD<br>SUITE 260<br>LAS VEGAS, NV 89119<br>MIN: 100263195009951979 | | |
|---|---|---|---|---|---|
| LOAN NUMBER | DATE | YEARLY INTEREST RATE | DATE FINANCE CHARGE BEGINS TO ACCRUE | NUMBER OF PAYMENTS | DATE FIRST PAYMENT DUE |
| 9500995197 | 02/17/06 | 11.950 % | 03/01/06 | 360 | 04/01/06 |
| AMOUNT OF FIRST PAYMENT | AMOUNT OF OTHER PAYMENTS | | DATE FINAL PAYMENT DUE | | PRINCIPAL BALANCE |
| $ 666.10 | $ 666.10 | | 03/01/36 | | $65,000.00 |
| This loan is secured by a Deed of Trust on the real property located at:<br>1022 KINGS VIEW COURT. HENDERSON, NV 89015 | | | | | |

The words "I," "me," "my." and "us" refer to all Borrowers signing this Note. The words "you" and "your" refer to the holder of the Note.

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay the Principal Balance shown above to your order. I understand that the Lender may transfer this Note.

### 2. INTEREST

I will pay interest at the Yearly Interest Rate shown above. Interest will be charged on the unpaid principal beginning on the date shown above in the "Date Finance Charge Begins to Accrue" box and will continue until the Principal Balance has been paid in full. For purposes of computing interest, interest will be charged on the assumption that each monthly payment is received on the date it is due.

### 3. PAYMENTS

I will pay the principal and interest by making payments each month. Each of my monthly payments will be in the amount shown above in the "Amount of Other Payments" box except my first payment will be in the amount shown above in the "Amount of First Payment" box. I will make monthly payments on the same day of each month beginning on the date shown above in the "Date First Payment Due" box. I will make these payments every month until I have paid the Principal Balance of this Note and any other charges, described below, that I may owe under this Note. If on the "Date Final Payment Due" shown above I still owe amounts under this Note, I will pay all those amounts, in full, on that date, which is called the "maturity date." I will make my monthly payments at the address shown above under your name or at a different place if required by you.

### 4. MY FAILURE TO PAY AS REQUIRED

**(A) Late Charge**

If a payment is more than 15 days late, I will be charged a late charge equal to the lesser of $50 or 5% of the unpaid amount of the payment.

**(B) Check Collection Charge**

If I make a payment by check, negotiable order of withdrawal, share draft or other negotiable instrument and that instrument is returned or dishonored for any reason, I will pay you a check collection charge. The amount of the charge will be any amount passed on to you by any financial institution in connection with such instrument not to exceed $20.

**(C) Default**

I will be in default if:

(1) I do not pay the full amount of any monthly payment on time;

(2) I default under the Mortgage as defined in section 9 which secures this Note or under any other mortgage which I enter into with you;

(3) I make an assignment for the benefit of creditors;

(4) I violate or fail to abide by any term or condition of this Note or any other agreement I have with you;

(5) I have made any statement or representation to you in connection with this loan which is false or incorrect;

(6) I begin (or if someone else begins against me) a case in bankruptcy, receivership, reorganization, rehabilitation, insolvency or any other matter whether or not similar to them; or if a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative is appointed for me or any of my property;

(7) My property becomes subject to a proceeding in eminent domain or other similar governmental action ;

### SEE PAGE 2 FOR ADDITIONAL IMPORTANT TERMS

I hereby acknowledge receipt of a completed and signed copy of this Note.

PETER F CHURCHILL _____ (Borrower)

RENE S CHURCHILL _____ (Borrower)

_____ (Borrower)

PETER F CHURCHILL
02/16/06    20:08    1808977
2-2232A (8/03) Nevada First & Second Mortgage (Prepayment Penalty)

(8) Garnishment, attachment, levy, or execution is issued against any of my property or effects (or any property of any surety or guarantor hereof); or

(9) You, in good faith, as defined in NRS section 104., deem yourself to be insecure for any reason or believe that the prospect of payment by me on this Note (or any surety or guarantor hereof) is impaired.

If I am in default you may require me to pay immediately the full unpaid principal balance plus accrued and unpaid interest, and any other charges I owe under this Note.

**(D) Payment of Note Holder's Costs and Expenses**

If I default and you require me to pay immediately in full as described above, I promise to pay your reasonable attorney's fees if this loan is referred to an attorney, not your employee, for collection, and legally permitted foreclosure expenses and court costs.

## 5. MY RIGHT TO MAKE PREPAYMENTS/PREPAYMENT PENALTY

I have the right to make payments of principal before they are due. Any payment made before it is due is known as a "prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

If I make a partial prepayment, there will be no changes in the amount of my monthly payments unless you agree to those changes. I may make a full or partial prepayment at any time except that I may be charged a penalty for a prepayment in full or in part made in any of the first two years during the term of the loan, as follows: In any 12 month period of the loan during the loan's first two years, I may pay up to 20% of the original balance without penalty. During any such 12 month period, I will pay a prepayment penalty equal to the payment of 6 months advance interest on the amount prepaid in excess of 20% of the original principal balance. You earn any prepaid finance charge at the time the loan is made and no part of it will be refunded if I pay in full ahead of schedule. (16)

## 6. MY WAIVERS

I waive my rights to require you to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certificate of nonpayment (known as a "protest"). Anyone else (i) who agrees to keep the promises made in this Note, or (ii) who agrees to make payments to you if I fail to keep my promises under this Note, or (iii) who signs this Note to transfer it to someone else (known as "guarantors, sureties and endorsers"), also waives these rights. I also waive any rights I may have under any valuation or appraisement laws.

## 7. CHANGES/DELAY IN ENFORCEMENT

No change or cancellation of this Note shall be effective unless the change or cancellation is in writing and has been signed by you and me. You can delay enforcing, or fail to enforce, any or all of your remedies under this Note without losing those or other remedies or rights.

## 8. GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it or by mailing it addressed to me at the Mailing Address above. A notice will be delivered to me at a different address if I give you a notice of my different address.

Any notice that must be given to you under this Note will be given by mailing it to you at the address stated above. A notice will be mailed to you at a different address if I am given a notice of that different address.

## 9. THIS NOTE COVERED BY A MORTGAGE OR DEED OF TRUST

A Mortgage or Deed of Trust of the same date as this Note protects you from possible losses which might result if I do not keep the promises which I make in this Note. That Mortgage or Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

## 10. RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed plus the charges as described in Section 4(d) above and to keep all of the promises made in this Note. Any guarantor, surety or endorser of the Note (as described in Section 6 above) is also obligated to do these things. You may enforce your rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety or endorser of this Note (as described in Section 6 above) is also obligated to keep all of the promises made in this Note.

## 11. APPLICATION OF PAYMENTS

Payments will be applied to accrued interest before the unpaid principal balance.

## 12. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. You may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 13. APPLICABLE LAW

This Note shall be governed by the laws of the State of Nevada and any applicable federal law. In the event of a conflict between any provision of this Note and any federal or Nevada State statute, law or regulation in effect as of the date of this Note, the statute, law or regulation shall control to the extent of such conflict and the provision contained in this Note shall be without effect. All other provisions of this Note will remain fully effective and enforceable.

SEE PAGE 1 FOR ADDITIONAL IMPORTANT TERMS

**≋ Zillow.com**



**1022 Kings View Ct**
Henderson NV 89002
2 beds, 2.0 baths, 1,445 sq ft
**Zestimate®: $196,000**

Find out more from an agent:
**My Estimate:**

**Monthly Payment: $ 841 edit**
ING DIRECT 5/1 ARM-See Rates today!

**Bird's Eye View**

See a

**Home Info**
**Public Facts:**
- Single family
- 2 beds
- 2.0 bath
- 1,445 sqft
- Lot 6,098 sqft
- Built in 2002

**Neighborhood: Paradise Hills**
**Nearby Schools:**

**District:**
   Clark
**Primary:**
   Fay Galloway Element ...
**Middle:**
   Jack & Terry Mannion ...
**High:**
   Foothill High School

See more Paradise Hills local information
See more Paradise Hills schools

**Charts & Data**


EXHIBIT A

**An agent from Prudential Americana Group, REALTORS will contact you about this home.**



- $400k
- $350k
- $300k
- $250k
- $195k
- $150k

Zillow.com

See all charts & data

First Name*

Last Name*

Email Address*

**ZESTIMATE®: $196,000**
Value Range: $137,200 -
$201,880
30-day change: -$7,000
*Zestimate updated: 09/11/2009*

Phone Number*
( ) - ext.

I am*
Please Choose One

Message (optional)

**Last sale and tax info**

**Sold 02/23/2006:**
$325,000
**2009 Property Tax:**
$1,822

**Or call (888) 321-0667**

: 18 – Car-Dependent

**Street Map**

**1022 Kings View Court, Henderson, NV**
Bird's eye view and larger map for 1022 Kings View Ct
Edit map location for 1022 Kings View Ct

**Alternate Addresses**
1022, kings view, king s view, king s vw, king so view, king so vw,
king south view, king south vw, king southview, king southvw, king
soview, king sovw, king sview, king svw, kings view, kings vw, kingso

## ** SECTION 362 INFORMATION SHEET **

Peter Churchill and Rene Churchill
DEBTOR(S)

Chapter 7
Case No.: 09-22799-mkn

U.S. Bank National Association, as Trustee, on behalf of the holders of the Terwin Mortgage Trust 2006-5, Asset-backed Certificates, Series 2006-5, TMTS Series 2006-5
MOVANT
PROPERTY INVOLVED IN THIS MOTION: 1022 Kings VW Ct., Henderson NV 89002

NOTICE SERVED ON: Debtor(s) _____ x _____; Debtor (s) Counsel _____ x _____; Trustee _____ x _____

DATE OF SERVICE: _____

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st U.S. Bank National Association, as Trustee, | 1st _____ |
| on behalf of the holders of the Terwin Mortgage | 2nd _____ |
| Trust 2006-5, Asset-backed Certificates, Series | Total Encumbrances: $_____ |
| 2006-5, TMTS Series 2006-5 (PB$259,666.72) | APPRAISAL or OPINION as to VALUE: |
| Total Encumbrances: $259,666.72 | |
| APPRAISAL or OPINION as to VALUE: "Per attached valuation from www.zillow.com$196,000.00 | |
| TERMS OF MOVANT'S CONTRACT WITH THE DEBTOR | OFFER OF "ADEQUATE PROTECTION" FOR MOVANT: |
| Amount of Note: $260,000.00 Interest Rate: 8.3840000000000003 Duration: 30 Year Payment Per Month: $2,025.15 Date of Default: May 1, 2009 Amount of Arrearages: $11,507.68 Date of Notice of Default: September 9, 2009 SPECIAL CIRCUMSTANCES: I, Gregory L. Wilde, hereby certify that an attempt has been made to confer with debtor(s) counsel, or with debtor(s) and that more than two (2) business days have expired, and that after sincere effort to do so, counsel has been unable to resolve this matter without court action. | |
| | SPECIAL CIRCUMSTANCES: |
| | SUBMITTED BY: _____ |
| | SIGNATURE: _____ |
| SUBMITTED BY: _____ SIGNATURE: _____ | |

EXHIBIT _____